# EXHIBIT A

Return Date: No return date scheduled
Hearing Date: 8/17/2020 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
          Cook County, IL

FILED
4/22/2020 6:19 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03903

9126003

| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

AMBASSADOR ANIMAL HOSPITAL, LTD &

OAK PARK ANIMAL HOSPITAL, LTD
_____
(Name all parties)        Case No. **20-CH-03822**
                v.
ROADRUNNER PHARMACY, INC & COVETRUS,
INC

☒ **SUMMONS**      ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons,** not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Please serve:**                          **Documents to serve:**

Roadrunner Pharmacy, Inc.                  • Summons;
c/o: Corporation Service Company           • Complaint with Exhibits;
8825 N 23rd Avenue, Suite 100              • Civil Cover Sheet; and
Phoenix, AZ 85021                          • Class Action Complaint

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3

FILED DATE: 4/22/2020 6:19 PM  2020CH03903

**Summons – Alias Summons**      **(08/01/18) CCG 0001 B**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.:   44533

Atty Name:   Bock, Hatch, Lewis & Oppenheim, LLC

Atty. for:   Plaintiffs

Address:   134 N. La Salle Street, Suite 1000

City:   Chicago

State:   IL    Zip:   60602

Telephone:   (312) 658-5500

Primary Email:   service@classlawyers.com

Witness: _____

4/22/2020 6:19 PM DOROTHY BROWN

_____

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with
Defendant or other person):

FILED DATE: 4/22/2020 6:19 PM   2020CH03903

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

- Richard J Daley Center
  50 W Washington
  Chicago, IL 60602

- District 2 - Skokie
  5600 Old Orchard Rd
  Skokie, IL 60077

- District 3 - Rolling Meadows
  2121 Euclid
  Rolling Meadows, IL 60008

- District 4 - Maywood
  1500 Maybrook Ave
  Maywood, IL 60153

- District 5 - Bridgeview
  10220 S 76th Ave
  Bridgeview, IL 60455

- District 6 - Markham
  16501 S Kedzie Pkwy
  Markham, IL 60428

- Domestic Violence Court
  555 W Harrison
  Chicago, IL 60607

- Juvenile Center Building
  2245 W Ogden Ave, Rm 13
  Chicago, IL 60602

- Criminal Court Building
  2650 S California Ave, Rm 526
  Chicago, IL 60608

### Daley Center Divisions/Departments

- Civil Division
  Richard J Daley Center
  50 W Washington, Rm 601
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- ☒ Chancery Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Domestic Relations Division
  Richard J Daley Center
  50 W Washington, Rm 802
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Civil Appeals
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Criminal Department
  Richard J Daley Center
  50 W Washington, Rm 1006
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- County Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Probate Division
  Richard J Daley Center
  50 W Washington, Rm 1202
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Law Division
  Richard J Daley Center
  50 W Washington, Rm 801
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

- Traffic Division
  Richard J Daley Center
  50 W Washington, Lower Level
  Chicago, IL 60602
  Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 3 of 3

FILED DATE: 4/22/2020 6:19 PM   2020CH03903

Return Date: No return date scheduled
Hearing Date: 8/17/2020 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
    Cook County, IL

FILED
4/22/2020 6:18 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03903

9126011

Chancery Division Civil Cover Sheet
General Chancery Section

(02/19/20) CCCH 0623

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

AMBASSADOR ANIMAL HOSPITAL, LTD & OAK
PARK ANIMAL HOSPITAL, LTD.

                        Plaintiff

v.

ROADRUNNER PHARMACY, INC. &  COVETRUS, INC.
                        Defendant

Case No: ___20-CH-03822___

## CHANCERY DIVISION CIVIL COVER SHEET
## GENERAL CHANCERY SECTION

A Chancery Division Civil Cover Sheet - General Chancery Section shall be filed with the initial complaint in all actions filed in the General Chancery Section of Chancery Division. The information contained herein is for administrative purposes only. Please check the box in front of the appropriate category which best characterizes your action being filed.

**Only one (1) case type may be checked with this cover sheet.**

| | | | | | |
|---|---|---|---|---|---|
| 0005 | ☐ Administrative Review | | 0017 | ☐ Mandamus | |
| 0001 | ☑ Class Action | | 0018 | ☐ Ne Exeat | |
| 0002 | ☐ Declaratory Judgment | | 0019 | ☐ Partition | |
| 0004 | ☐ Injunction | | 0020 | ☐ Quiet Title | |
| | | | 0021 | ☐ Quo Warranto | |
| 0007 | ☐ General Chancery | | 0022 | ☐ Redemption Rights | |
| 0010 | ☐ Accounting | | 0023 | ☐ Reformation of a Contract | |
| 0011 | ☐ Arbitration | | 0024 | ☐ Rescission of a Contract | |
| 0012 | ☐ Certiorari | | 0025 | ☐ Specific Performance | |
| 0013 | ☐ Dissolution of Corporation | | 0026 | ☐ Trust Construction | |
| 0014 | ☐ Dissolution of Partnership | | 0050 | ☐ Internet Take Down Action (Compromising Images) | |
| 0015 | ☐ Equitable Lien | | | | |
| 0016 | ☐ Interpleader | | | ☐ Other (specify) _____ | |

◉ Atty. No.: __44533__     ○ Pro Se 99500

Atty Name: __Bock, Hatch, Lewis & Oppenheim, LLC__

Atty. for: __Plaintiffs__

Address: __134 N. La Salle Street, Suite 1000__

City: __Chicago__     State: __IL__

Zip: __60602__

Telephone: __(312) 658-5500__

Primary Email: __service@classlawyers.com__

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's
Clerk's Office Electronic Notice Policy and
choose to opt in to electronic notice from the
Clerk's office for this case at this email address:

Email: _____

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 1

FILED DATE: 4/22/2020 6:18 PM  2020CH03903

Return Date: No return date scheduled
Hearing Date: 8/17/2020 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
  Cook County, IL

FILED DATE: 4/17/2020 3:57 PM  2020CH03903

FILED
4/17/2020 3:57 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03903

9100053

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
## COUNTY DEPARTMENT, CHANCERY DIVISION

AMBASSADOR ANIMAL HOSPITAL, LTD., )
and OAK PARK ANIMAL HOSPITAL LTD., )
individually and as the representatives of a )
class of similarly-situated persons, )
                                      )
                  Plaintiffs, )
                                      )      No.   2020CH03903
      v. )
                                        )
ROADRUNNER PHARMACY, INC., and )
COVETRUS, INC., )
                                        )
                Defendants. )

## CLASS ACTION COMPLAINT

     Plaintiffs Ambassador Animal Hospital, Ltd. and Oak Park Animal Hospital Ltd. ("Plaintiffs"), bring this action on behalf of themselves and all other persons similarly-situated and, except as to those allegations pertaining to Plaintiffs or their attorneys, which allegations are based upon personal knowledge except as stated otherwise, allege the following upon information and belief against defendants Roadrunner Pharmacy, Inc. ("Roadrunner") and Covetrus, Inc. ("Covetrus," and collectively with Roadrunner, "Defendants"):

## PRELIMINARY STATEMENT

     1.    On behalf of themselves and the class, Plaintiffs seek statutory damages and other relief from Defendants' practice of sending unsolicited advertisements by facsimile.

     2.    Defendants have sent advertisements by facsimile in attempts to

FILED DATE: 4/17/2020 3:57 PM  2020CH03903

market and sell property, goods, or services.

3.    The federal Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), prohibits any person or entity from sending or having an agent send any "unsolicited advertisement" by facsimile ("junk faxes" or "unsolicited faxes").

4.    The TCPA mandates that if a person or entity sends an otherwise-unsolicited advertisement by facsimile to a fax recipient with which the sender has an "established business relationship," then the sender must include a specific, clear, and conspicuous opt-out notice on the first page of the advertisement. *See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii).

5.    The TCPA provides a private right of action and provides minimum statutory damages of $500 per violation.  If the Court finds the advertisements were sent knowingly or willfully, then the Court can increase the damages up to three times $500.

6.    Unsolicited faxes damage their recipients.  An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  A junk fax interrupts the recipient's privacy.  Unsolicited faxes tie up telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, use paper and ink toner for the sender's marketing purposes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

FILED DATE: 4/17/2020 3:57 PM 2020CH03903

7.     On behalf of themselves and all others similarly-situated, Plaintiffs bring this case as a class action asserting claims against Defendants under the TCPA and the common law of conversion.

8.     Plaintiffs seek an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

9.     Plaintiff Ambassador Animal Hospital Ltd. is an Illinois corporation with its principal place of business in Oak Park, Illinois.

10.     Plaintiff Oak Park Animal Hospital Ltd. is an Illinois corporation with its principal place of business in Oak Park, Illinois.

11.     Defendant Roadrunner is an Arizona corporation with its principal place of business in Phoenix, Arizona.

12.     Defendant Covetrus is a Delaware corporation with its principal place of business in Portland, Maine.

13.     Jurisdiction is conferred by 735 ILCS 5/2-209 in that Defendants have transacted business in Illinois, and/or committed tortious acts in Illinois related to the matters complained of herein. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, *et seq.* because neither Defendant is a resident of Illinois, and also because some of the tortious acts complained of occurred in Cook County, Illinois. Specifically, some of the illegal faxing alleged herein took place in Cook County, Illinois.

3

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

## FACTS

14.     Roadrunner is an animal health company offering a large formulary of veterinary compounded medications. In 2017, Roadrunner was acquired by Vets First Choice, which became Covetrus in the first quarter of 2019.

15.     On information and belief, Defendants have sent advertisements in fax broadcasts to one or more lists of targeted recipients throughout the United States and throughout the class period alleged herein. At least three of those faxes were sent to Plaintiffs between February 2018 and May 2018, copies of which are attached as Exhibit A, with Plaintiff Ambassador receiving faxes in February and April 2018 and Plaintiff Oak Park receiving a fax on May 28, 2018.

16.     The faxes attached as Exhibit A advertised the commercial availability or quality of property, goods, or services. Two of the faxes advertise Roadrunner, and the third advertises both Roadrunner and Covetrus. Plaintiffs intend to discover whether Covetrus sent faxes advertising only Covetrus.

17.     Plaintiffs are among the persons to whom Defendants sent advertisements by fax.

18.     Plaintiffs did not expressly invite or give permission to receive advertisements by fax from Roadrunner.

19.     Plaintiffs did not expressly invite or give permission to receive advertisements by fax from Covetrus.

20.     Defendants' faxes did not contain the opt-out notices required by the TCPA. *See, e.g.*, Exhibit A.

4

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

21.    On information and belief, one or both of Defendants sent faxes to Plaintiffs and more than 39 other recipients without their prior express permission or invitation, and without the opt-out notice required on faxes sent to persons with whom Defendants can demonstrate an "established business relationship." This allegation is based, in part, on the fact that Plaintiffs never expressly invited or permitted anyone to send the subject fax advertisements to them, that the faxes attached as Exhibit A are generic form faxes, that sending advertisements by fax is an inexpensive way to reach a wide audience, and that the faxes attached as Exhibit A have no opt-out notice.

## CLASS REPRESENTATION ALLEGATIONS

22.    Plaintiffs bring this action as a class action on behalf of themselves and a class of all others similarly-situated as members of the class, initially defined as follows:

> All persons sent at least one telephone facsimile message (a "fax"): (1) on or after April 17, 2016; (2) from or on behalf of Roadrunner or Covetrus; (3) advertising property, goods, or services of Roadrunner or Covetrus; (4) without the fax recipient's prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

Plaintiffs anticipate modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about the scope of Defendants' fax advertising practices as well as discovery as to any potential affirmative defenses Defendants may plead.

23.    Excluded from the class are Defendants, any entity in which one or more of Defendants have a controlling interest, Defendants' employees, officers and

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

directors of Defendants, Defendants' legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, and his or her family.

24. On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA. Plaintiffs intend to locate those advertisements in discovery. *See* Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

25. This action is brought, and may properly be maintained as, a class action under 735 ILCS 5/2-801. This action satisfies the class action prerequisites because the class is too numerous for individual joinder, common questions of law or fact predominate over individual questions, the representative parties and their attorneys will fairly and adequately protect the interests of the entire class, and this class action is an appropriate method for the fair and efficient adjudication of the controversy.

26. **Numerosity/Impracticality of Joinder:** On information and belief, the class includes more than thirty-nine persons and, thus, is so numerous that joinder of all members is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but can be obtained from Defendants' records or the records of third parties.

27. **Questions of Law or Fact Common to the Class:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the class.

6

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

      a.    Whether Defendants sent unsolicited advertisements by fax;

      b.    Whether Defendants' faxes advertised the commercial availability or quality of property, goods, or services;

      c.    The manner and method Defendants used to compile or obtain the lists of fax numbers to which they sent advertisements by fax;

      d.    Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

      e.    Whether Defendants included clear and conspicuous opt-out notices on their faxed advertisements, including all content the TCPA requires;

      f.    Whether each Defendant is, respectively, directly or vicariously liable for violating the TCPA;

      g.    Whether Plaintiffs and the other class members are entitled to statutory damages;

      h.    Whether Defendants should be enjoined from faxing advertisements in the future;

      i.    Whether the Court should award trebled damages; and

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

j.    Whether Defendants' conduct constituted common law conversion.

28.    **Fair and Adequate Representation:**   Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs do not have any interests adverse to the class. Plaintiffs have retained counsel who are experienced in class action litigation generally and the TCPA specifically.

29.    **Appropriateness:**  A class action is an appropriate method for the fair and efficient resolution of this controversy. Plaintiffs envision no difficulty in the management of this case as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

30.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

31.    Plaintiffs bring Count I on behalf of themselves and a class of similarly-situated persons.

32.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine...." 47 U.S.C. § 227 (b) (1).

33.    The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

34.    The TCPA provides:

8

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

3.   <u>Private right of action</u>.   A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

    (A)   An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

    (B)   An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

    (C)   Both such actions.

47 U.S.C. § 227 (b) (3).

35.   In relevant part, the TCPA states that "[t]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection . . . in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (i) the notice is clear and conspicuous . . ." 47 U.S.C. § 227 (b) (2) (D) (i).

36.   Additionally, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful . . ." 47 U.S.C. § 227 (b) (2)

9

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

(D) (ii). The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200 (a) (4) (iii) (B).

37.     The opt-out notice must also include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice . . ." 47 U.S.C. § 227 (b) (2) (D) (iv).

38.     "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (v) the telephone and facsimile machine numbers and the cost-free mechanism . . . permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227 (b) (2) (D) (v).

39.     The FCC's regulations of opt-out notices on facsimile advertisements are set forth at 47 C.F.R. § 64.1200 (a) (4) (iii)

40.     The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful. 47 U.S.C. § 227.

41.     Defendants violated 47 U.S.C. § 227 *et seq.* by sending advertisements by fax to Plaintiffs and the other class members without their prior express invitation or permission and, to the extent Defendants will contend they sent the facsimiles on the basis of "established business relationship," by failing to include the clear, conspicuous, and content-rich opt-out notice on the first page of each facsimile.

FILED DATE: 4/17/2020 3:57 PM    2020CH03903

42.     Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the recipients are unable to stop the burdens imposed by this form of advertisement.

43.     The TCPA is a strict liability statute and Defendants are liable to Plaintiffs and the other class members even if their actions were negligent.

44.     Each Defendant is liable because, respectively, it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority and ratification.

45.     Defendants knew or should have known that Plaintiffs and the other class members had not given express invitation or permission for Defendants or anybody else to send them advertisements by facsimile and that the faxes did not display the opt-out notices required by the TCPA (including the FCC's regulations).

46.     Defendants' actions caused damages to Plaintiffs and the other class members.  Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Moreover, the subject faxes

11

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

used Plaintiffs' and the class's fax machines. The subject faxes cost Plaintiffs time, as Plaintiffs and their employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. Time otherwise would have been spent on Plaintiffs' business activities. Defendants' faxes unlawfully interrupted Plaintiffs' and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiffs and the other class members from the sending of the faxes occurred outside Defendants' premises.

47. Even if Defendants did not intend to cause damage to Plaintiffs and the other class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in their favor and against Defendants, jointly and severally as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B. That the Court award $500.00 in statutory damages against each Defendant for its violation of the TCPA;

C. That the Court treble the statutory damages to $1,500 per violation if it finds that Defendants knowingly or willfully violated the TCPA;

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

D.      That the Court enter an injunction prohibiting each Defendant from sending advertisements by fax without first demonstrating that it has obtained express invitation or permission to fax advertisements or included the required opt-out notice on each advertisement sent by fax to a person with whom the Defendant has an established business relationship; and

E.      That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

48.     Plaintiffs incorporates all paragraphs preceding Count I as though fully set forth herein.

49.     Plaintiffs brings Count II on behalf of themselves and a class of similarly-situated persons and alleging claims under the common law of conversion.

50.     By sending unsolicited faxes to Plaintiffs and the other class members, Defendants improperly and unlawfully converted their fax machines, toner and paper to Defendants' own use. Defendants also converted the recipients' time to their own marketing use.

51.     Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the other class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

52.     By sending the unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

53.     Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

54.     Plaintiffs and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

55.     Each of Defendants' unsolicited faxes that Plaintiffs received effectively stole Plaintiffs' employees' time by forcing one or more employees to receive, review, and act upon Defendants' illegal faxes. Just the time spent in retrieving an unsolicited facsimile from the fax machine, reviewing it, and tossing it in the garbage can is burdensome and wasteful and converts Plaintiffs valuable time to Defendants' marketing effort. Defendants knew or should have known employees' time is valuable to Plaintiffs and the other class members.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, demand judgment in their favor and against Defendants, jointly and severally as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages.

D.     That the Court award reasonable attorney's fees;

14

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

E.    That the Court award costs of suit; and

F.    That the Court award such further relief as it may deem just and proper.

Respectfully submitted,
AMBASSADOR ANIMAL HOSPITAL, LTD., and OAK PARK ANIMAL HOSPITAL, LTD., individually and as the representatives of a class of similarly-situated persons,

By:    /s/ Phillip A. Bock
           One of their attorneys

Phillip A. Bock (ARDC #6224502)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC (#44533)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
Email: service@classlawyers.com

Return Date: No return date scheduled
Hearing Date: 8/17/2020 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
     Cook County, IL

FILED
4/17/2020 3:57 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03903

9100053

FILED DATE: 4/17/2020 3:57 PM    2020CH03903

# EXHIBIT A

Fm:Road Runner Pharmacy Inc   To: 16308389629   11:16 02/28/18 GMT-05 Pg 1-1

FILED DATE: 4/17/2020 3:57 PM   2020CH03903



# FREE EXPEDITED SHIPPING!

**ROADRUNNER PHARMACY**

## TEN Most Purchased Items Nationwide from Roadrunner Pharmacy:

1. Buprenorphine 0.6 mg/ml Injection and 0.3 mg/ml Oral Solution
2. Doxycycline Hyclate 300 mg Flex Tabs
3. Fluconazole 400 mg Flex Tabs
4. Methimazole 50mg/ml Transdermal Gels
5. Metronidazole Benzoate Suspension 50 mg/ml
6. Oti-Pack-E Otic Syringe Gel
7. Prednisolone 10 mg/ml Suspension
8. Tacrolite Ophthalmic Drops
9. Trilostane Suspension
10. Ursodiol 300 mg Flex Tabs

# Delivering Quality with a Passion for Service!

**We would like to inform you about changes to our FREE Guaranteed Next Business Day Delivery times.** New prescriptions for compounded capsules, Flex Tabs and liquids, billed and shipped **TO YOUR CLINIC** will now need to be called in by **12 pm** (Arizona time) to qualify for the Next Business Day Delivery. Any non-guaranteed medications that are requiring an expedite will also follow this new time frame.

Our team is here Monday through Friday, 12 hours each day, ready to take your call. We have dozens of pharmacists ready to assist you with your specific customized veterinary needs.

Thank you for being a valued Roadrunner customer!

# 877-518-4589

This fax is intended for Roadrunner Pharmacy customers only. IF YOU DO NOT WISH TO RECEIVE FAXES from Roadrunner Pharmacy, you may email a request to brian.vales@roadrunnerpharmacy.net or call 877-518-4589 extension 7680 instructing us not to send you further facsimiles. Your request will only be deemed valid if it contains the telephone number(s) of the facsimile machines you do not want us to send faxes to. Our failure to comply with your request within 30 days is unlawful.

RECEIVED 04/05/2018 10:07AM 16308309629       AMBASSADOR AH
Fm:Road Runner Pharmacy Inc   To: Ambassador Animal Hospital (16308309629)      11:06 04/05/18 GMT-04 Pg  1-1

FILED DATE: 4/17/2020 3:57 PM   2020CH03903



# Roadrunner Pharmacy

As we continue to upgrade our back-office systems, we are pleased and excited to announce the **LAUNCH** of our new Customer Platform PayStand. The new Platform introduces the following features and enhancements:

1) Invoices delivered directly by email and fax.
2) View account balances via link in real time.
3) Ability to pay invoices through the secure portal by multiple payment methods (eCheck, ACH, eCash, Credit and Debit Cards).

Be watching for an email with additional details in April!!

To confirm or update your practice email, send an email with the correct address to:

*ar@roadrunnerpharmacy.net*

Direct questions to: Accounts Receivable

# 877-518-4589
Option 3

This fax is intended for Roadrunner Pharmacy customers only. IF YOU DO NOT WISH TO RECEIVE FAXES from Roadrunner Pharmacy, you may email a request to brian.vales@roadrunnerpharmacy.net or call 877-518-4589 extension 7880 instructing us not to send you further facsimiles. Your request will only be deemed valid if it contains the telephone number(s) of the facsimile machines you do not want us to send faxes to. Our failure to comply with your request within 30 days is unlawful.

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

# Hate waiting on hold?

## So do we! That's why we pride ourselves in our industry-leading service standards.



**Your time is important.**
Most calls are answered in less than 30 seconds*, so you don't have to wait!

*90% of calls are answered in under 90 seconds, 86% in under 45 seconds, and 78% in under 30 seconds.



**Service you can trust.**
Our highly specialized veterinary pharmacists and certified technicians are here to help!


"Love that you can talk to a real person in a very timely fashion. Both times I called I was on hold for no more than a minute!"

Danielle G., Google Reviewer


## Roadrunner Pharmacy has the Nation's Largest Formulary of Veterinary Compounded Medications

✓ PCAB accredited     ✓ Fast Fill easy client reordering     ✓ Fast Free Shipping!

Call one of our 45 veterinary pharmacists at **877-518-4589**


roadrunner PHARMACY     covetrus

If you no longer wish to receive this type of service communication, please call 844-205-9140 or fax 844-426-4070 to opt out.

Return Date: No return date scheduled
Hearing Date: 8/17/2020 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
        Cook County, IL

FILED
4/17/2020 3:57 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03903

9100053

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

# EXHIBIT B

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) • 312-658-5555 (Fax)

April 17, 2020

**VIA PROCESS SERVER**

Roadrunner Pharmacy, Inc .
*c/o:* Corporation Service Company
8825 N 23rd Avenue, Suite 100
Phoenix, AZ 85021

Covetrus, Inc .
*c/o:* Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

      Re:    Demand for Preservation of Tangible Documents and Electronically
              Stored Information in *Ambassador Animal Hospital, Ltd. et. al. v.*
              *Roadrunner Pharmacy, Inc. and Covetrus, Inc.*

Dear sir or madame:

    We represent Ambassador Animal Hospital, Ltd. and Oak Park Animal
Hospital, Inc. ("Plaintiffs") in the above mentioned case. Plaintiffs allege that
Roadrunner Pharmacy, Inc. and Covetrus, Inc. ("Defendants" or "you") sent
unsolicited advertisements by fax in violation of the TCPA.

    We consider electronic data to be a valuable and irreplaceable source of
discovery and evidence in this matter. The laws and rules prohibiting the
destruction of evidence apply to electronic data with the same force as they apply to
other kinds of evidence.

    Plaintiffs hereby demand that you preserve all documents, tangible things
and electronically stored information potentially relevant to the issues in this cause.
As used in this document, "you" and "your" refers to Roadrunner Pharmacy, Inc.
and Covetrus, Inc., yourDefendants predecessors, successors, parents, subsidiaries,
divisions or affiliates, and their respective officers, directors, agents, attorneys,
accountants, employees, partners or other persons occupying similar positions or

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

Roadrunner and Covetrus
April 17, 2020
Page 2 of 8

performing similar functions. "Third parties," as used in this document, refer to anyone taking action on behalf of either Defendant and any employees or agents thereof.

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Image and facsimile files (*e.g.*, .pdf, .tiff, .jpg, .gif images);
- Digital communications (*e.g.*, e-mail, voicemail, instant messaging, text messages, and all social media content);
- Word processed documents and drafts (*e.g.*, using Word or WordPerfect or any other word processing system);
- Spreadsheets and tables (*e.g.*, Excel, Lotus 123, or any other computer-generated worksheets);
- Network access and server activity logs;
- Databases (*e.g.*, Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (*e.g.*, Outlook, Salesforce, ACT!);
- Calendar and Diary Application Data (*e.g.*, Outlook, Yahoo, Google, blog tools);
- Online Access Data (*e.g.*, temporary internet files, history, cookies);
- Presentations (*e.g.*, PowerPoint, Corel Presentations)
- Project management application data; and
- Back up and archival files (*e.g.*, Zip, .GHO).

ESI also includes information or data stored on proprietary software, databases or systems.

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (*eff.*

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

Roadrunner and Covetrus
April 17, 2020
Page 3 of 8

12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably inaccessible must be preserved in the interim so as not to deprive the Plaintiffs of its right to secure the evidence or the Court of its right to adjudicate the issue.

### A.  Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI including, without limitation, information with the earlier of a Created or Last Modified date on or after January 1, 2015 through the date of this demand and concerning:

a. All electronic mail ("e-mail") and information about e-mail (including message contents, header information, and logs of e-mail systems usage) sent or received by Defendant, third parties, or anyone relating to Defendants or third parties;

b. All other e-mail and information about e-mail (including message contents, header information, and logs of e-mail systems usage) containing information about Defendant or third parties or work performed for Defendant or third parties;

c. All databases (including all records and field structural information in such databases) containing any reference to and/or information about Defendants or Defendants' intended fax recipients, or third parties or third-parties' intended fax recipients;

d. All logs of faxing activity (including all reports indicating success or failure of attempted transmission) containing information about Defendants and/or Defendants' intended fax recipients, or third parties or third parties' intended fax recipients;

e. All word processing files and file fragments containing information about Defendants or third parties;

f. All electronic data files and file fragments created by application programs that process financial, accounting, and billing information related to Defendants or third parties;

g. All files and file fragments containing information from electronic calendars and scheduling programs regarding Defendants and/or fax transmissions sent on behalf of Defendant, or third parties and/or fax transmissions sent on behalf of third parties;

FILED DATE: 4/17/2020 3:57 PM    2020CH03903

Roadrunner and Covetrus
April 17, 2020
Page 4 of 8

h. All electronic data files and file fragments created or used via electronic spreadsheet programs where such data files contain information about Defendants and/or Defendants' intended fax recipients, or third parties and/or third parties' intended fax recipients; including files and file fragments created by Defendants or third parties;

i. All other electronic data containing information about Defendants or third parties; and

j. All e-mail from third party sources that may contain references or correspondence relating to Defendants or third parties.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

## B. Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;

Roadrunner and Covetrus
April 17, 2020
Page 5 of 8

- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

### C. Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices maintained offsite, including Cloud Based Data Storage, including any File Transfer Protocol Host Account or Server Storage, whether provided by a server owned or maintained by your subsidiaries, agents, and/or contractors, maintained by a company on behalf of you or shared by you and Defendants or any third parties, demand is made that you preserve the ESI on those devices.

With regard to all data storage for Defendants or any employee, subsidiary, contractor, or agent, stop any activity which my result in the loss of such electronic data, including the rotation, destruction, overwriting, and/or erasure of such media in whole or in part, unless a true and correct copy of each such electronic file has been made and steps have been taken to assure that such copy will be preserved and accessible for purposes of this litigation

### D. Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to

Roadrunner and Covetrus
April 17, 2020
Page 6 of 8

less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

### E.     Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For e-mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### F.     Servers

With respect to servers like those used to manage e-mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. Please call to discuss the sufficiency of preservation methods if you have questions.

### G.     Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including programs, utilities, logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters, legacy or proprietary devices, or the like.

### H.     Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

Roadrunner and Covetrus
April 17, 2020
Page 7 of 8

FILED DATE: 4/17/2020 3:57 PM   2020CH03903

### I.   Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

### J.   Preservation Protocols

We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

### K.   Do Not Delay Preservation

I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

Roadrunner and Covetrus
April 17, 2020
Page 8 of 8

### L.     Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

Respectfully,

/s/ Phillip A. Bock

Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
(312)658-5500
phil@classlawyers.com

Return Date: No return date scheduled
Hearing Date: 8/17/2020 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court

FILED DATE: 4/17/2020 4:13 PM    2020CH03903

FILED
4/17/2020 4:13 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03903

9100432

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
## COUNTY DEPARTMENT, CHANCERY DIVISION

AMBASSADOR ANIMAL HOSPITAL, LTD., )
and OAK PARK ANIMAL HOSPITAL LTD., )
individually and as the representatives of a )
class of similarly-situated persons, )
                                      )
                Plaintiff, )
                                      )           No. 2020 CH 03903
      v. )
                                        )
ROADRUNNER PHARMACY, INC., and )
COVETRUS, INC., )
                                        )
                Defendants. )

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs Ambassador Animal Hospital, Ltd. and Oak Park Animal Hospital,

Ltd. ("Plaintiffs"), on behalf of themselves and all others similarly situated,

respectfully moves the Court pursuant to 735 ILCS 5/2-801, *et seq.*, to certify a class

in this case, offering the following in support thereof:

      1.    Plaintiffs propose the following class definition:

      All persons sent at least one telephone facsimile message (a "fax"): (1)
      on or after April 17, 2016; (2) from or on behalf of Roadrunner or
      Covetrus; (3) advertising property, goods, or services of Roadrunner or
      Covetrus; (4) without the fax recipient's prior express invitation or
      permission; and (5) without the clear and conspicuous opt-out notice
      required by 47 C.F.R. § 64.1200 (a) (4) (iii).

Excluded from the class are Defendants, any entity in which one or more of

Defendants have a controlling interest, Defendants' employees, officers and

directors of Defendants, Defendants' legal representatives, heirs, successors, and

assigns, and any Judge assigned to this action, and his or her family.

FILED DATE: 4/17/2020 4:13 PM   2020CH03903

2.    The class defined above is so numerous that joinder of all members is impracticable. 735 ILCS 5/2-801(1). A class action is appropriate when joinder is economically impracticable for both the litigants and the court. 735 ILCS 5/2-801(1); *see also Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320 (1977). When there is a large number of potential claimants, and the individual amount of each claim is relatively small, Illinois courts are particularly receptive to a class action. *See Miner v. Gillette Co.*, 87 Ill. 2d 7 (1981). Although there is no "magic number" that always establishes whether a class is so numerous that individual joinder would be impracticable, 40 is typically treated as the threshold above which numerosity is presumed. *See Wood River Area Devel. Corp. v. Germania Fed. Savings and Loan Assoc.*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990) ("Our research has supported this guideline."). Class-related discovery will provide the Court with the necessary details, but on information and belief the class in this case exceeds 40 members.

3.    There are questions of fact or law common to the class, which predominate over any question affecting only individual members. 735 ILCS 5/2-801 (2). The case involves common fact questions about Defendants' practice of sending advertisements by facsimile and common legal questions under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), such as:

      a.    Whether Defendants sent unsolicited advertisements by fax;

      b.    Whether Defendants' faxes advertised the commercial availability or quality of property, goods, or services;

2

FILED DATE: 4/17/2020 4:13 PM   2020CH03903

c.      The manner and method Defendants used to compile or obtain the lists of fax numbers to which they sent advertisements by fax;

d.      Whether Defendants faxed advertisements without first obtaining the recipients' express permission or invitation;

e.      Whether Defendants included clear and conspicuous opt-out notices on their faxed advertisements, including all content the TCPA requires;

f.      Whether each Defendant is, respectively, directly or vicariously liable for violating the TCPA;

g.      Whether Plaintiffs and the other class members are entitled to statutory damages;

h.      Whether Defendants should be enjoined from faxing advertisements in the future;

i.      Whether the Court should award trebled damages; and

j.      Whether Defendants' conduct constituted common law conversion.

4.      In *P.J.'s Concrete Pumping Serv.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004), the Appellate Court explained why certification is especially appropriate in a case involving uniform misconduct:

> The primary factual issue in this case is a uniform billing practice that allegedly violated the Consumer Fraud Act in the same manner as to all class members. The propriety of such a uniform practice is amenable to being resolved in a class action. Once the trial court finds that a predominating question of fact or law exists, the presence of individual questions does not necessarily defeat class certification.

3

FILED DATE: 4/17/2020 4:13 PM   2020CH03903

*Id., citing Kennedy v. Commercial Carriers, Inc.*, 294 Ill. App. 3d 34, 39 (1st Dist. 1997). Similarly, this case will focus squarely on Defendants' fax advertising campaigns.

5.     Plaintiffs and their counsel will adequately protect the interests of the class. 735 ILCS 5/2-801 (3). The adequate representation requirement is designed to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claims. *See Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1st Dist. 1991). The adequacy of representation requirement is satisfied if Plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and there are no antagonistic interests between the representative party and the class. *See Carillo* v. *Jam Productions, Ltd.,* 108 Ill. App. 3d 126 (1st Dist. 1982). Plaintiffs have retained counsel experienced in class actions generally and the TCPA specifically.

6.     This class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (4). Section 5/2-801 (4) requires that the "class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). When the first three statutory criteria are met, this "manifest[s] that the final requirement of the statute is fulfilled." *Steinberg*, 69 Ill. 2d at 339. *See also Barliant* v. *Follett Corp.,* 74 Ill. 2d 226, 239-40 (1978). As demonstrated above, the first three criteria are met in this action.

7.     Moreover, when determining whether a class action is appropriate, courts often consider whether the class action device can best secure economies of

FILED DATE: 4/17/2020 4:13 PM   2020CH03903

time, effort and expenses and promote uniformity of decision or accomplish other ends of equity and justice in the case under consideration. *See, e.g., Gordon*, 224 Ill. App. 3d at 203. Here, the individual class members suffered damages that, while cognizable, are small in terms of their dollar value. Given the small amount of money at issue for each class member and the fact that proof of the class's claims will involve the same central issues, this single case—rather than hundreds of individual cases—offers the best (and perhaps only) means for litigating these claims against Defendants.

WHEREFORE, Plaintiffs pray that this Court enter an order pursuant to 735 ILCS 5/2-801 certifying the class, appointing Plaintiffs as the class representatives, and appointing Plaintiff's attorneys as class counsel.

Respectfully submitted,

AMBASSADOR ANIMAL HOSPITAL, LTD., and OAK PARK ANIMAL HOSPITAL, LTD., individually and as the representatives of a class of similarly-situated persons,

By:     /s/ Phillip A. Bock
            One of their attorneys

Phillip A. Bock (ARDC #6224502)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC (#44533)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
Email: service@classlawyers.com

5

FILED DATE: 4/17/2020 4:13 PM   2020CH03903

## CERTIFICATE OF SERVICE

    I hereby certify that I caused a true and correct copy of the foregoing Motion for Class Certification to be served on each Defendant with the Summons and Class Action Complaint.

<u>/s/ Phillip A. Bock</u>

Return Date: No return date scheduled
Hearing Date: 8/17/2020 9:30 AM - 9:30 AM
Courtroom Number: 2308
Location: District 1 Court
    Cook County, IL

FILED
4/23/2020 2:04 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03903

9130918

FILED DATE: 4/23/2020 2:04 PM   2020CH03903

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| AMBASSADOR ANIMAL HOSPITAL, LTD., and OAK PARK ANIMAL HOSPITAL LTD., individually on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) **No. 20-CH-03822** ) ) **CLASS ACTION** |
| ROADRUNNER PHARMACY, INC. and COVETRUS, INC., | ) ) ) |
| Defendants | ) |

### NOTICE OF MOTION

On **July 6, 2020, at 8:30 a.m.**, or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge Neil H. Cohen, or any Judge sitting in his stead, in Courtroom 2308 of the Richard J. Daley Center, 50 W. Washington Street, Chicago, Illinois, and then and there present *Plaintiff's Motion for Class Certification.*

/s/ Phillip A. Bock
One of Plaintiff's Attorneys

Phillip A. Bock (ARDC #6224502)
Bock, Hatch, Lewis & Oppenheim LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312-658-5500
Email: service@classlawyers.com

FILED DATE: 4/23/2020 2:04 PM   2020CH03903

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Notice of Motion for Class Certification to be served on each Defendant with the Summons, Class Action Complaint, and Motion for Class Certification.


/s/ Phillip A. Bock
One of Plaintiff's Attorneys